Good morning, Your Honors. May it please the Court, Kristi Hughes from Federal Defenders, on behalf of Ms. Quintos. The District Court imposed an unlawful sentence on Ms. Quintos. It imposed $1,400 restitution, which it had no authority to impose. And it imposed a three-year term of supervised release without deducting the 43 days that Ms. Quintos had already spent in custody. The government has asked this Court to dismiss Ms. Quintos' appeal in light of the Fugitive Disentitlement Doctrine. But that doctrine is an equitable one, meaning that this Court has to balance Ms. Quintos' actions in failing to report to probation with the District Court's actions. Why? Pardon? Why? I don't find any law to suggest that. In fact, I've found quite a few cases that say whether it's supposed to be – whether I'm supposed to rectify all of this bad act of the District Court is not something I ought to even think about. In fact, Antonio Martinez says dismissing the appeal of a defendant who clearly has a winning chance on the merit clearly advances the purposes of the act. Well, again, Your Honor, it is discretionary and it is equitable. So I understand what Your Honor is saying. You don't want me to dismiss it. You're not understanding what I'm saying. I got a case dead on point that says better to dismiss the winning claims than the losing one because it betters the purposes of the act. Have you got any precedent that suggests opposite of that? I don't, Your Honor. I think that we have egregious facts in this case that perhaps – Well, but that sounds to me to be the best ones that I'm supposed to dismiss so that it makes sure that defendants don't run. I understand that. I would ask, Your Honor, to consider the fact that there are – there are two parts to this – to this appeal. One is the underlying revocation itself, which we've challenged under the Confrontation Clause, and the other is the unlawful sentence portion. And the government actually has asked this Court for a limited remand to correct the three-year term of supervisor lease. Well, I understand that because the government's already suggested that it's wrong. But my worry is how do I get around Antonio Martinez unless I go on bunk? Because it says this is clearly the way to do it. Winning chance on the merits clearly advances. Now, I appreciate your only answer to that. It seems to me is that it's up to me. It's discretionary. It is, and it's also equitable. So I understand what Your Honor is saying, a winning claim on appeal. But I think that there's – there's two parts to this. One is not just a winning claim on appeal. This is a clearly unlawful sentence that the government's conceded. And the second part is the district court abuses power in – That's just a winning claim on appeal. Well, and it's combined with the district court's abuse of power in keeping Ms. Quintos in a debtor's prison for a week over the Christmas holiday to try and get her to pay back the $1,000, and then threatening her with more time in custody when she objected to the imposition of the restitution order. Ms. Hughes, may I ask you, what are the equities that weigh in favor of Ms. Quintos as far as not being here, as far as not being available, as far as being a fugitive? Is there some reason why she's a fugitive? I mean, do you have anything in the record which tells us why she's not here? There's nothing in the record. Isn't that the kind of consideration we should weigh when we're getting into equitable considerations? Why isn't she here? I mean, if she were threatened by narcos, for instance, if she were somehow the victim of domestic violence, then there'd be some explanation for her non-appearance, her failure to appear. What efforts have you made to ascertain the answer to Judge Bayh's question? Well, Your Honor, I mean, I think we're limited to what's in the record, because I think any conversations that I may have had with Ms. Quintos would be privileged, and so we're not. In your blue brief at page 17, you mentioned that you've not been able to contact her. Has that changed? She has been in contact with me by the phone. But again, I don't think I can disclose that. What I can point the Court to is that in the record ---- I think you can disclose the fact that you conversed with her without disclosing the contents of the communication. I'm sorry. That's what I meant to say. I mean, we have spoken by the phone, but I don't think I can disclose to this Court what her reasons are. I can point the Court to the facts in the record where at the supervised release revocation, her counsel represented that she had serious health issues. She was undergoing treatment for cancer. She had diabetes and was having a lot of circulatory problems with her leg. And so I'll suggest that that's a reason that she has not shown up to probation. But again, I can't ---- that's the only evidence that we have in the record as a reason. Well, is she ---- and the problem I'm having with this is we do have a case that says just not showing up to parole is not ---- does not make you a fugitive. Is there something else she was supposed to show up for that she didn't show up for? I mean, is she really a fugitive? Under Gonzales, she's not a fugitive. She just failed ---- Well, just a minute. Let's talk about Gonzales. Is really Gonzales applicable in this case? In Gonzales, at the time of the hearing, the person was already caught. Was already in jail. Was already had their parole revocation proceeding. And the Court said, well, in that instance, it really doesn't seem they're a fugitive. And I agree. But that isn't the question here. The question here is the presence is unknown, never challenged in any brief. Her attorney doesn't know her whereabouts, or at least until today, we didn't even know that her attorney had even contacted her. She has a warrant outstanding since January, and nothing's been done. Do you know her whereabouts? That, again, would come from the communication that I had with her. I do know her whereabouts. Well, I think that's a yes or no question. I'm not asking you to disclose any public information. I just want to be absolutely clear in case I have to write a dissent in this case. I want to know what the exact facts are. I do know her whereabouts, yes. Okay. So is there somewhere where she's supposed to be that she is other than parole? She was supposed to report to probation within 72 hours, and then she was going to get put on a list. To get into the halfway house that the judge wanted her to go to with her kids, you have to get on a waiting list, essentially. So she was supposed to coordinate that with probation. That hadn't happened because she hadn't met with probation. So the condition of her probation that she violated was reporting to probation within 72 hours of release. Okay. So is there a warrant for arrest outstanding right now? There is. Probation filed about three weeks after that, January. And have the marshals sought to execute that warrant? No. The government's made no showing that it's attempted to find her or that it's attempted to execute that warrant. And I would presume that you would have to disclose her location if the U.S. Marshals came to execute the warrant. I believe so. I mean, if I were called, you know, into district court and made to testify, then I perhaps would have to disclose it at that point. So the warrant could be executed, but the government's chosen not to execute it. Correct. Are you sure you'd have to disclose your location? I'm not sure. And I mean, I don't know that the government could actually execute the warrant as the circumstances stand right now. Why? I don't know that they would have the authority to do so. Why? I think that answering that question would disclose confidential information that I've discussed with my client. It might involve Mexico. Well, I understand that. I mean, the bottom line is that here we are. We're on the brink of an equitable decision. And, okay, I have precedent in front of me that says, better to do this when you're bound to win than when you're bound to lose. I have precedent in front of me that says, just failing to show up for a probation hearing is not enough. But then the facts of the case were different, as I've explained to you. And so here I am sitting on the precipice between, is she a fugitive or isn't she? And so I'm asking you all the questions. Because, frankly, if it's equity, two of us can decide, and then there'd be a dissent, I guess, or three of us can decide. But in equitable situations, you want to know what you have in front of you. Yeah, I think we need more information to exercise our discretion on this. And there must be some information you could provide us that's not within the attorney-client privilege. I mean, the only thing in the record is she didn't show up to probation. And I would put it on the government. I mean, if they want this appeal dismissed and they argue that she's a fugitive, they've made no showing that she's a fugitive. They haven't even tried to execute that warrant. They haven't tried to contact her. They have her family's phone numbers. They have all that information. No, no, I don't think that's quite correct. Didn't the probation officer in his affidavit for issuance of the warrant affy that he had attempted to contact her and had been unable to do so? Is that in the supplemental excerpt, Your Honor? I think so, yes. When we transferred this case to the trial counsel, that wasn't forwarded to me. The probation officer stated that he contacted her attorney of record, Mr. LeBlanc, who informed the probation officer that he was unable to contact her. It appears that that's all he did. So there was some attempt to contact her. I guess. I mean, he contacted her counsel, but he didn't contact any of the phone numbers that he had for her. He didn't send the marshals out. Well, she didn't give any contact information. It's kind of difficult to do that. He knew that she was staying with a friend in Chula Vista, and I believe that the contact information for that friend had been proffered at the district court. The district court had that. And so I don't know that there was absolutely no contact information that the government could follow up on. In terms of Gonzales, I just dispute a little bit that characterization because I think that the point of Gonzales was I understand the facts, but the people Well, when you got the facts and you square in the face, it's a very tough thing to suggest that this is the same case. Well, I don't know that the facts were necessarily dispositive of the court's holding that failing to show up for coverage that she was in jail, that she'd already had her violation and all of that didn't weigh on the court. I think that weighed in terms of the equitable decision of whether or not to dismiss, but I don't think that it weighed on the determination of whether or not the defendant there was a fugitive. And I think that's what we were discussing about Gonzales is just the determination of whether or not she's a fugitive. And then the next step is if she is a fugitive, then whether or not this court should exercise discretion to dismiss. I see that I'm over my time. Well, give me a second. Who has the burden of proof on proving that she's a fugitive? The government has asked this court to dismiss under the Fugitive Entitlement Doctrine, Disentitlement Doctrine, so I would argue that the government has the burden to show that she's a fugitive. Okay. And so how is a fugitive defined? Well, under Gonzales, it's not defined as someone who has failed to comply with the term of probation. Generally, it's defined as someone who has absconded. But when you look at this court, at other courts, other cases from this court, it's defined as someone who doesn't show up to sentencing or someone who doesn't show up to trial. It's generally not defined as someone who has served her entire custodial sentence, supervised release has been revoked, and then as a condition of her supervised release, she's been ordered to report to probation. That's violating a term of your probation. That's not being a fugitive. You served your custodial sentence at this point. And in my memory, when I was on the district court, the marshals never hesitated to execute these warrants, especially on Friday afternoons and picking up people on Friday afternoons and bringing them down to MDC. I don't understand why the marshals haven't attempted to execute this warrant. That's been my experience as well, but I think the government can probably speak to that a little better than I can. I'm sure he can. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Randy Jones, assistant United States attorney on behalf of the appellee, the United States of America. First of all, the Antonio Martinez case, as Judge Smith has indicated, is right on point, and I wanted to quote one other line out of that. It says, because no one has any clue where Antonio Martinez is, his petition has the same quote, his I win tells you'll never find me quality that justifies this entitlement in other contexts. And in this particular case, that's exactly what happened. The facts are that when Ms. Kingtos was allowed to get out of jail and go live with her friend, her attorney, Mr. LeBlanc promised that he would get the address for that friend's residence in Chula Vista to the court. That never happened. So we had no clue as to where Ms. Kingtos was. Until today, we didn't know whether or not the defense had any contact with her because Ms. LeBlanc has never indicated to me or to anyone else in the government that they knew where she was. So there was no way that we could execute the warrant. As you recall from the facts in this case, she left Hawaii. Her mom was in Hawaii. That was the last contact that her mother had with her. Her mother had no idea where she was in the United States. And when Judge Burns said that I'm going to let you get out of court, but you've got to report to probation office within 72 hours, and in addition to that, you've got to go to an RCC, a residential treatment center, so that she could have a place to be with her kids because apparently she had a child and she had no place to stay. So we had no way of knowing where she was. We had no clue, just as in the Antonio Martinez case, as to where she was. So we couldn't execute the warrant. And in the Gonzalez case, it talks about, you know, the doctrine doesn't apply to an appellant just because he is not reported as directed to the probation officer in the absence of a showing that he has fled or hidden himself. And we argue that she has, in fact, hidden herself from the government. The probation officer did the only thing that it could do when she didn't show up was to contact her attorney of record. And Mr. LeBlanc said, I have no idea where she is. Okay, so Mr. LeBlanc said that, but yet this counsel says she knows where she is. And today, this morning, is the first that we've ever heard of that. I don't believe that she's given that information to probation because they were required, and Mr. LeBlanc promised that he would give the address for Ms. Quintos to the probation officer so that the probation officer could monitor her and make sure that he could stay in contact with her. So apparently, either Mr. LeBlanc knew or, you know, it just happened today. But probation doesn't know. The government doesn't know. I've not received any information from Ms. LeBlanc or anyone from federal defenders that Ms. Quintos is anywhere where we could reach her or where the probation officer could reach her. So it's that, as I said in Martinez, heads I win and tails you'll never find me. And that's why this case should be dismissed. And I agree with Judge Smith that this is the exact type of case that the Fugitive Disentitlement Doctrine should apply to. Going to the underlying merits in this case, though, there's some real problematic things in this case. For example, Judge Byrne's use of a telephonic witness without proper identification, his ordering restitution, his not crediting her with time served. I mean, all of that is serious. Also keeping her in prison over the holidays when she had cancer. And you would think that she would come before the court. She would do as she was told so that it doesn't matter if it's a vandal appeal, she would want to have it heard so that it matter be taken care of. You would think she might be pretty darn scared to come before this court or subject herself to Judge Byrne's again. No. I disagree, Your Honor, because she came, there were two or three hearings before Judge Byrne's, and she appeared to each one of those. And he didn't threaten her. In fact, he was very lenient with her. He said to her, look, it's very serious that you're going to take $1,400. You know, that's what I'm concerned about. You know, can you pay it back? And counsel and Ms. Quinto says that, Your Honor, give us an opportunity to pay it back. We'll try to pay this money back. And so Judge Byrne says, okay, you know, Ms. Quinto, you know, do you have anybody? Do you have any friends around here you can talk to? Yeah, give me an opportunity to do that. And Judge Byrne's did that. He allowed Ms. LeBlanc to try to find, talk to friends. And then Ms. LeBlanc said, Your Honor, you know, unfortunately she can't find anybody. And so he wasn't asking her to pay it back in order to stay in jail or pay it back. He said that I'm going to let you out because it's the Christmas holidays. I'm going to let you out, but you've got to promise me you'll pay this back. You've got to promise me you'll make a good faith effort to pay this back. He wasn't putting a hammer over her head saying you must pay this back or you're going to stay here until you pay it back. He says, I'm going to let you out, but just promise me you'll make a good faith effort to pay it back. And what did she do? Yes, Your Honor, I'll do that. Let me go stay with my friend. I'll call probation. I'll go to the RCC. And she's out, and you never hear from her again. Mr. Jones. Yes, sir. You mentioned that she had a child. Yes, according to. Where's the child? We never saw the child. There was never any proof to us that she had a child. But apparently when she was at the OSC, she mentioned something about her counselor mentioned that she had a young child. But, again, you know, I never saw the child, and the child never came to court. Well, that doesn't mean the child doesn't exist. No. That's because you never saw the child. And I think that's what Judge Burns was relying on, on her good word, on her promise, on her representations to the court. And that's what he did. And with respect to the confrontation issue, as the court is aware, I mean, this wasn't a full-blown trial. No, but still, there's an issue there, even under Morris, when you do the balancing. But, well, I suppose that if Ms. Quintus were to report to the probation office today and we were to get notice about that, we wouldn't be able to dismiss this case. That's an option. So we should probably, that could happen before we actually get something out on this case. So if that does happen, the parties should let us know. In the meantime, is there anything else you want to say on the merits? Well, I was just asked that the court go ahead now and dismiss this indictment or dismiss this appeal. I know, but we don't work instantaneously. I don't think any order of our courts come out the same day. I'm just kind of curious, and maybe the court is too, as to how long counsel has known about the whereabouts of Ms. Quintus. That would also go to you. And how reasonable, you know, what's a reasonable time before any order would issue that she was a fugitive? And whether she should have a chance to kind of show up and explain herself to, I don't know, who would she have to show up to now? Well, you know, there's a warrant for her arrest, so she would actually be arrested, I assume, and brought back before Judge Burns. And if she is suffering from cancer or has some kind of physical thing, they have treatment facilities in MDC? Yes. They're treatment facilities for folks who have illnesses. There's medical staff there. I've had defendants in the past who've had medical issues who've been treated at MCC or gotten some other medical treatment through the Bureau of Prisons. So, but again, we're asking that the court dismiss the appeal. Mr. Jones, let me ask you a question. When did you file your brief in this case in which you sought fugitive disentitlement dismissal? Actually, we filed an earlier request for a summary dismissal that was denied, and I have that paperwork in my briefcase. But before we filed our brief, we asked for a summary dismissal. So counsel has known of your position that you're seeking dismissal for some time now? As soon as the defense filed their appeal, we filed our motion to have this matter dismissed. And when did counsel change? Do you remember that? Mr. LeBlanc left the office about a month ago. Because he was the one, he filed the original opening brief. Then you filed your motion for summary. And when did you start taking over this case? About a month ago when Mr. LeBlanc left the office. He completed all of the briefings that were filed. And just so you know, the government agreed to several extensions for Mr. LeBlanc to file this brief. So there was an ample amount of time. So is the record that Mr. LeBlanc didn't know where the client was, but you found out? Yes. She contacted me, I'd say, three weeks ago. She actually contacted the office looking for Mr. LeBlanc. And when they said, he's left you now in the San Francisco office, she got in touch with me. I didn't have a number. I didn't have anything to report. I didn't have anybody to contact her when this appeal was transferred to me. And to my understanding, Mr. LeBlanc, before he left the office, didn't know where she was. But she called and contacted you? Correct. About three weeks ago. Is that correct? I don't have an exact date written down, but I'd say it was about three weeks ago. All right. Thank you very much. Thank you very much. Is there anything you wish to add about this? Not unless your Honor has any questions for me. Submit. Okay. Thank you. All right. The case of United States v. Quintos is submitted.
judges: Wardlaw, Bea, Smith